# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 21-11-H-BMM |
| Plaintiff, | |
| vs. | ORDER |
| ROSEMARIE ANN MURROW, | |
| Defendant. | |

## INTRODUCTION

Defendant Rosemarie Ann Murrow ("Murrow") filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on August 19, 2024. (Doc. 57.), followed by a supplemental memorandum in support on November 18, 2024 (Doc. 62.) Murrow seeks a sentence reduction based on her serious medical conditions, inadequate medical care, and poor conditions at the Bureau of Prisons. Murrow further cites her substantial rehabilitation efforts during incarceration. (Doc. 57 at 1-20; Doc. 62 at 10-12.) The Government opposes Murrow's motion, arguing that she has not provided extraordinary and compelling reasons warranting a sentence reduction and that her release would not be justified under the factors set forth in 18 U.S.C. § 3553(a). (Doc. 65 at 7-9.)

1

## FACTUAL BACKGROUND

Murrow was convicted of several felony offenses in New Jersey, prohibiting her from possessing firearms in 2008. (PSR ¶ 12.) Law enforcement in Helena received information from informants in 2020 that Murrow was distributing pound-quantities of methamphetamine in the Helena area and that there were firearms in her home. (PSR ¶¶ 13-15.) Law enforcement subsequently conducted controlled purchases of methamphetamine from Murrow in October and November 2020. (PSR ¶ 16.) Lent executed a search warrant April 2021 at Murrow's home where they obtained methamphetamine and firearms. (PSR ¶¶ 19-21.)

Following her arrest on the original indictment in this case, Murrow was detained after a detention hearing (PSR ¶¶ 2-3.) Murrow suffered from several medical conditions while incarcerated that required inpatient treatment. (Doc. 27 at 2-3.) Although law enforcement from the Cascade County Sheriff's Office initially provided officers to guard Murrow while she was in the hospital, they eventually determined they would not continue to do so (*Id.*) The U.S. Marshal's Service also lacked the manpower needed to provide the necessary guard. The United States agreed to remove its objection to Murrow's pretrial release while she was in an inpatient medical environment (*Id.*)

After several delays to allow Murrow to recover, Murrow pleaded guilty on June 7, 2022, to a superseding information charging her with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (PSR ¶¶ 5; Doc. 39.) Murrow's offense level was 29 and her criminal history score of 24 points placed her in category VI. (PSR ¶¶ 37, 57.) Considering Murrow's age and medical issues, as well as her recent heart surgery, the Court sentenced Murrow to the custody of the Bureau of Prisons ("BOP") for 90 months on Count I and 90 months on Count II to run concurrently, followed by four years of supervised release on Count I and three years on Count II, to run concurrently. (Doc. 49.)

Murrow submitted a request for compassionate release to the Warden of FMC Carswell on August 4, 2024, which was denied on April 11, 2024. (Doc. 57-1; Doc. 62-3 at 1.) Murrow filed the present motion for compassionate release on August 19, 2024 (Doc. 57.), followed by a supplemental memorandum on November 18, 2024. (Doc. 62.) Murrow seeks a sentence reduction based on her serious medical conditions, inadequate medical care at FMC Carswell, and rehabilitation efforts.

Murrow began serving her federal sentence in November 2022, and is currently incarcerated at FMC Carswell in Fort Worth, Texas. Murrow's projected release date is November 23, 2027. *See* BOP Inmate Finder, https://www.bop.gov/inmateloc/ (accessed July 30, 2025).

## DISCUSSION

### I.  Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800

4

(9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide as follows:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

. . .

(B) The defendant is—
(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to

5

>
> provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . .
>
> (5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3. The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This provision recognizes that "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from

unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983))). USSG § 1B1.13(b).

## II. Exhaustion of Remedies

Murrow appropriately exhausted her administrative remedies as required before filing her motion for compassionate release. Murrow submitted a request for compassionate release to the Warden of FMC Carswell, which was denied on April 11, 2024 (Doc. 54-1; Doc. 62-3 at 1.) Murrow has exhausted her administrative remedies, as more than 30 days have elapsed since that request was sent. 18 U.S.C. § 3582(c)(1)(A).

## III. Extraordinary and Compelling Reason for Reduction

### a. Medical Condition and inadequate medical care

Murrow argues that her serious medical conditions, combined with inadequate medical care at FMC Carswell, constitute extraordinary and compelling reasons for compassionate release (Doc. 57 at 8-1; Doc. 62 at 4-6) The Court must evaluate whether her medical circumstances "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which...she is not expected to recover." USSG § 1B1.13(b)(1)(B).

Murrow's medical history is extensive. Murrow underwent open-heart surgery for mitral valve replacement in March 2022, shortly before sentencing (PSR ¶ 78.) At the time of sentencing, Murrow suffered from numerous medical issues

7

including lesions on her thyroid, severe scoliosis, a hernia in her chest, fibromyalgia, Lyme's disease, osteoporosis, neuropathy in hands and feet, chronic pain, and was undergoing cardiac rehabilitation following her March 2022 surgery. (PSR ¶ 78-83.) Murrow's medical history also includes COPD, anemia, insomnia, gastroesophageal reflux disease, muscle spasms, radiculopathy, and a history of hepatitis C. (*Id.*) Following surgery, Murrow was diagnosed with atrial fibrillation with RVR, hyperthyroidism, hypertension, and chronic kidney disease (*Id.*) Medical records indicate Murrow has experienced syncopal episodes, including one in May 2024 where she "fell back," requiring wheelchair use thereafter (Doc. 62-2 at 1160.)

While these conditions are undoubtedly serious, the Government correctly notes that Murrow's medical conditions were well known to the Court at the time of sentencing. (Doc. 65 at 7.) As detailed in the PSR, Murrow's medical issues at sentencing included lesions on her thyroid, severe scoliosis, a hernia in her chest, fibromyalgia, Lyme's disease, osteoporosis, neuropathy in hands and feet, chronic pain, and cardiac rehabilitation following her March 2022 open-heart surgery. (PSR ¶ 78.) The Court specifically accounted for these conditions when granting a substantial downward variance from the advisory guideline range of 151-188 months to 90 months.

The Government further argues, and the record supports, that FMC Carswell has provided ongoing and appropriate medical care (Doc. 65 at 7.) The extensive

medical documentation shows that Murrow has received cardiology consultations, MRIs, echocardiograms, specialized equipment (walker, hospital bed, back brace), and various medications including Warfarin for her cardiac conditions. (Doc. 62-2) Murrow has received evaluations from specialists, pain management consultations, and regular monitoring of her conditions.

Regarding alleged inadequate care, Murrow provides an affidavit describing substandard conditions including mold, fallen ceiling areas, lack of hot water due to broken pipes, and a general lack of hygiene and access to care, including appointments made but cancelled (Doc. 62-4.) The Court takes these allegations seriously and finds that Murrow's circumstances warrant a slight reduction. The extensive medical records provided demonstrate that Murrow has received continuous medical treatment and monitoring at FMC Carswell. More significantly, as the Government notes, Murrow "has not demonstrated how she will obtain better care or treatment for her conditions if she were to be released." (Doc. 65 at 7.)

b. **Post-Sentencing Rehabilitation**

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Murrow has shown rehabilitation efforts during her incarceration (Doc. 57 at 12.) Murrow has participated in various educational and vocational programs including beading class, cross stitch class, Ace Main: Nature, Ace Main: Africa, chair aerobics, exercise for

older adults, Ace Main: Creatures of the deep, billiard hospital, beginning crotchet, among others (Doc. 57 at 19.) Murrow indicates she is on the waiting list to be enrolled in additional courses including resolve workshop, cognitive thinking class, family/parenting class, and trauma class (Doc. 57 at 19.) Murrow has also maintained a relatively clean disciplinary record with only a single disciplinary incident for being in an unauthorized area (Doc. 57-3; Doc. 62 at 9.)

Regarding substance abuse treatment, Murrow submitted a request in May 2024 to participate in the methadone program due to experiencing cravings. The response indicated Murrow was placed on a list to be screened and was advised to seek psychology services in the interim. (Doc. 62-2 at 1157.) This acknowledgment of ongoing substance abuse issues demonstrates self-awareness about her addiction.

Murrow reports that she has "returned to the church and participate in religious programs" and that "family and friends have offered support." (Doc. 57 at 15-16) In her motion, Murrow expresses remorse, stating that she regrets that she committed this offense, and that it is to "late to show remorse." Murrow indicates that she has learned that there is more to life than to continue her criminal and illegal behavior (*Id.*)

The Court acknowledges Murrow's positive rehabilitation efforts. Though commendable, these efforts do not rise to the level of extraordinary when considered alongside her medical circumstances, and the Court must balance these positive

rehabilitation efforts against several factors. Given Murrow's extensive criminal history spanning decades, two years of positive programming, while commendable, represents a relatively brief period of law-abiding behavior in this context. Murrow's proactive request for methadone treatment in May 2024 demonstrates self-awareness and a commitment to addressing her substance abuse issues, though it also indicates that she continues to benefit from the structured treatment environment available in custody. Murrow's disciplinary record is largely clean. Murrow has not yet demonstrated, however, a sustained sobriety and law-abiding behavior in a community setting for any significant period.

Murrow's medical circumstances and post-sentence rehabilitation efforts, individually and collectively, fail to rise to the level of extraordinary and compelling reasons for an immediate compassionate release. The Court commends Murrow's rehabilitative progress and recognizes the challenges of managing cardiac and chronic medical conditions in custody. These factors were already considered by the Court at sentencing. The Court granted a substantial downward variance from the advisory guideline range of 151-188 months to 90 months specifically to account for Murrow's conditions. (Doc. 50.) Murrow's circumstances at this stage justify only a slight reduction in Murrow's already substantially reduced sentence.

## IV. Section 3553(a) Factors

Even if Murrow had established extraordinary and compelling circumstances,

the Court must still consider whether a sentence reduction would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

> States Code provides:
>
> The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The Court also must consider the kinds of sentences available, the need to provide restitution to any victims, the recommended guideline sentence, any pertinent policy statement, and the need to avoid unwarranted sentence disparities. (*Id.*)

Murrow's offenses were serious. Murrow distributed pound-quantities of methamphetamine and illegally possessed multiple firearms, including an unregistered short-barreled rifle, despite her prior felony convictions. (PSR ¶¶ 13-21.) These crimes caused significant harm to the community.

Murrow had an extensive criminal history with 24 criminal history points, placing her in Category VI. (PSR ¶ 57.) Murrow's record includes multiple drug-

related offenses spanning decades. Murrow's medical conditions prove significant, but they were known at sentencing when the Court granted a substantial downward variance from 151-188 months to 90 months.

At this point, Murrow has served only a fraction of her 90-month sentence. Given the seriousness of distributing large quantities of methamphetamine and illegal firearm possession, this limited time served does not reflect the seriousness of the offense or provide adequate deterrence. The public requires protection from further drug distribution, particularly given Murrow's lengthy history of drug offenses.

Releasing Murrow at this early stage of an already substantially reduced sentence would create unwarranted disparities with similarly situated defendants who serve their full terms despite medical issues. The Court recognizes the challenges of managing multiple serious medical conditions while in custody. The record demonstrates that Murrow is receiving ongoing medical care, and the seriousness of her offenses and criminal history weigh against immediate release at this time.

## CONCLUSION

For the foregoing reasons, the Court finds that Murrow has not established extraordinary and compelling reasons warranting a significant sentence reduction or immediate release under U.S.C. § 3582(c)(1)(A). The Court will reduce Murrow's

sentence by 6 months in light of her continued health issues and her efforts at rehabilitation while in custody. The Court would anticipate no further reductions in Murrow's sentence absent extraordinary circumstances.

## ORDER

Accordingly, **IT IS ORDERED** that Murrow's motion for compassionate release (Doc. 57; Doc. 62.) is **GRANTED in part.**

The Court reduces Murrow's sentence to 84 months.

**DATED** this 30th day of July, 2025.

_____
Brian Morris, Chief District Judge
United States District Court